BLANK ROME LLP
*Attorneys for Plaintiff*
William R. Bennett, III
1271 Avenue of the Americas
New York, NY 10020
(212) 885-5000
william.bennett@blankrome.com

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

AMSC ASA,
AMERICAN TANKER, INC.,
AMERICAN SHIPPING CORPORATION,
ASC LEASING III, INC.,
ASC LEASING IV, INC.,

Plaintiffs,

-and-

OVERSEAS SHIPHOLDING GROUP, INC.,
OSG BULK SHIPS, INC.,
OSG AMERICA, L.P.,
OVERSEAS LOS ANGELES LLC,
OVERSEAS NEW YORK LLC,

Defendants.

Civil Action:
IN ADMIRALTY

**VERIFIED COMPLAINT**

Plaintiffs AMSC ASA (f/k/a AMERICAN SHIPPING COMPANY ASA) ("AMSC"), AMERICAN TANKER, INC. ("American Tanker"), AMERICAN SHIPPING CORPORATION ("ASC"), ASC LEASING III, INC. ("ASC Leasing III"), and ASC LEASING IV, INC. ("ASC Leasing IV")(collectively, "Plaintiffs"), by and through their attorneys Blank Rome LLP, as and

for their Verified Complaint against Defendants OVERSEAS SHIPHOLDING GROUP, INC. ("OSG"), OSG BULK SHIPS, INC. ("OSG Bulk"), OSG AMERICA, L.P. ("OSG America"), OVERSEAS LOS ANGELES LLC ("Overseas Los Angeles") and OVERSEAS NEW YORK LLC ("Overseas New York")(collectively, the "Defendants") allege as follows:

**THE PARTIES**

i. Plaintiffs

1. Plaintiff AMSC is a Norwegian public limited liability company with U.S. subsidiaries that own nine U.S.-flag handy size product tankers and one U.S.-flag modern shuttle tanker, seven of which vessels remain on long term bareboat charters to the OSG group of companies and three of which vessels were recently redelivered to their respective owners upon expiration of their respective bareboat charters with the OSG group of companies.

2. Plaintiff American Tanker is a Delaware corporation beneficially owned by AMSC.

3. Plaintiff ASC is a Delaware corporation, wholly owned by Plaintiff American Tanker.

4. Plaintiff ASC Leasing III is a Delaware corporation, wholly owned by Plaintiff ASC, and the registered owner of the vessel M/V OVERSEAS LOS ANGELES (now known as M/V SEAKAY STAR).

5. Plaintiff ASC Leasing IV is a Delaware corporation, wholly owned by Plaintiff ASC, and the registered owner of the vessel M/V OVERSEAS NEW YORK (now known as M/V SEAKAY VALOR).

ii. Defendants

6. Defendant OSG is a Delaware corporation, with its principal place of business located at Two Harbour Place, 302 Knights Run Ave., Suite 1200, Tampa, Florida, 33602 and the

operator of a fleet of product tankers, including, until recently redelivered, the M/V OVERSEAS LOS ANGELES and the M/V OVERSEAS NEW YORK.

7. Defendant OSG Bulk is a New York corporation, wholly owned first-tier subsidiary of Defendant OSG with its principal place of business located at Two Harbour Place, 302 Knights Run Ave., Suite 1200, Tampa, Florida, 33602. Attached hereto as Exhibit 1 are copies of bank statements of ASC Leasing I, ASC Leasing II, ASC Leasing III, ASC Leasing IV, and ASC Leasing V establishing that OSG Bulk Ships, as paying agent, paid, and continues to pay, the charter hire on behalf of all "Overseas LLC" entities under the respective bareboat charters between the Overseas LLC entities and the corresponding "ASC Leasing" entity.

8. Defendant OSG America is a Delaware limited partnership beneficially owned in whole by OSG Bulk with its principal place of business located at Two Harbour Place, 302 Knights Run Ave., Suite 1200, Tampa, Florida, 33602.

9. Defendant Overseas Los Angeles is a Delaware limited liability company, a wholly owned subsidiary of Defendant OSG Bulk, and was the bareboat charterer of the M/V OVERSEAS LOS ANGELES with its principal place of business located at Two Harbour Place, 302 Knights Run Ave., Suite 1200, Tampa, Florida, 33602.

10. Defendant Overseas New York is a Delaware limited liability company, a wholly owned subsidiary of Defendant OSG Bulk, and was the bareboat charterer of the M/V OVERSEAS NEW YORK with its principal place of business located at Two Harbour Place, 302 Knights Run Ave., Suite 1200, Tampa, Florida, 33602.

## JURISDICTION AND VENUE

11. This is a case of admiralty and maritime jurisdiction, as hereinafter more fully appears, and is an admiralty or maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure. The Court has admiralty jurisdiction under 28 U.S.C. §1333.

12. This Court also has supplemental jurisdiction over all other related claims properly within this Court's original jurisdiction pursuant to 28 U.S.C. §1367.

13. Venue is proper in this District because certain agreements between certain parties, discussed at length more fully below, have forum selection clauses which provides that disputes between the parties be resolved in a state or federal court in the state of New York.

## FACTUAL BACKGROUND

14. Between 2005 and 2009, to facilitate the building, financing, purchase and operation of ten Jones Act product tankers, Defendant OSG and Plaintiff AMSC negotiated and entered into a series of agreements, which governed the parties' long-term maritime shipping relationship, including a Framework Agreement dated June 3, 2005, as amended from time to time, an Amended and Restated Framework Agreement dated December 11, 2009, a Bareboat Charter Guaranty, dated June 3, 2005, and a Universal Settlement Agreement dated December 11, 2009, all incorporated herein.

15. Further, the Defendant OSG entities, including Overseas Los Angeles and Overseas New York, and the Plaintiff AMSC entities, including Plaintiff ASC Leasing III and ASC Leasing IV, entered into separate bareboat charters for certain vessels, including the M/V OVERSEAS LOS ANGELES and M/V OVERSEAS NEW YORK (the "Bareboat Charters").

(i) The M/V OVERSEAS LOS ANGELES.

16. On June 3, 2005, ASC Leasing III entered into a Bareboat Charter with Overseas Los Angeles for the M/V OVERSEAS LOS ANGELES, which was amended and restated pursuant to the Amended and Restated Bareboat Charter, dated as of December 11, 2009. The Amended and Restated Bareboat Charter for the M/V OVERSEAS LOS ANGELES was further amended on July 30, 2012 (Amendment No. 1) and on December 8, 2022 (Amendment No. 2.)[1]

17. On June 29, 2005, Plaintiff ATI and OSG entered into an Agreement Regarding DPO Obligation For Hull No. 007, i.e., the M/V OVERSEAS LOS ANGELES ("DPO Agreement-LA") relating to the M/V OVERSEAS LOS ANGELES.

18. The purpose of the DPO Agreement-LA, among other matters, was to state the deferred payment obligations of OSG relating to the charter of the M/V OVERSEAS LOS ANGELES.

19. On November 8, 2007, the DPO Agreement-LA was assigned by OSG to OSG America pursuant to a Joinder Agreement dated November 8, 2007.

20. On December 11, 2009, ASC Leasing III and OSG Americas agreed to an Amendment to Agreement Regarding DPO Obligation For Hull No. 007.

21. The Amendment to Agreement Regarding DPO Obligation For Hull No. 007 provided, in relevant part as follows:

> 2. Repayment of the DPO Amount. Section 3 of the DPO Agreement is hereby deleted in its entirety and replaced with the following:
>
> > 3. Repayment of the DPO Amount. (a) Except as provided in paragraph (d) below, if the Bareboat Charter is terminated for any reason

[1] Attached hereto as Exhibit 2 is an invoice sent by OSG Bulk Ships Inc. to ASC Leasing III, Inc. indicating that it receives payments due to Overseas Los Angeles LLC under the bareboat charter between Overseas Los Angeles LLC and ASC Leasing III, Inc. for the M/V Overseas Los Angeles. OSG Bulk Ships Inc. a paying agent for "Overseas LLC" entities having received and made payments on behalf of Overseas LLC entities under the respective bareboat charters between the Overseas LLC entities and the corresponding "ASC Leasing" entity.

during the Fixed Term or upon expiration of the Fixed Term if the Bareboat Charter is not extended, then the DPO Amount as of the date of termination or expiration, calculated in accordance with Section 2 above, shall become immediately due and payable by OSP to Owner. If such amount is not paid within three (3) days, the amount due shall accrue interest at the Interest Rate until paid in full.

(b) Except as provided in paragraph (d) below, the DPO Amount as of the last day of the Fixed Term, calculated in accordance with Section 2 above, shall be a debt due from OSP to Owner and shall accrue interest on the unpaid portion thereof at the rate of six point zero four percent (6.04%) per annum until paid in full. The DPO Amount shall be payable in equal consecutive quarterly installments over a term of 18 years, with the first such payment being due at the first calendar quarter end occurring after expiration of the Fixed Term. Accrued and unpaid interest on the DPO Amount shall be payable with each such quarterly payment. OSP may prepay all or a portion of the DPO Amount at any time without penalty. Any such prepayment shall be applied first to accrued and unpaid interest and then to the outstanding principal installments in inverse order of their maturity.

(c) Except as provided in paragraph (d) below, upon expiration of the last Optional Period of the Bareboat Charter, or upon earlier termination of the Bareboat Charter during an Optional Period thereunder for any reason, the remaining balance of the DPO Amount, plus accrued and unpaid interest thereon, shall become immediately due and payable by OSP to Owner. If such amount is not paid within three (3) days, the full amount due (including accrued and unpaid interest) shall accrue interest at the Interest Rate until paid in full.

3. Governing Law. Section 4 of the DPO Agreement is hereby deleted in its entirety and replaced with the following:

4. Governing Law; Jurisdiction. (a) This Agreement shall be governed by, and construed in accordance with, the laws of the State of New York applicable to contracts executed and to be performed entirely within that State without giving effect to principles thereof relating to conflicts of law rules that would direct the application of the laws of another jurisdiction.

(b) All claims, counterclaims, demands, controversies, disputes, actions or causes of action of any nature or character arising out of or in connection with this Agreement or the transactions

> contemplated hereby, whether legal or equitable, known or unknown, contingent or otherwise ("Claims"), shall be brought and resolved solely in the United States District Court for the Southern District of New York and any appellate courts thereto, or if federal jurisdiction is lacking, then in the Supreme Court of the State of New York, New York County, and any appellate courts thereto. The parties agree not to assert any claim, defense or argument that the United States District Court for the Southern District of New York or, as applicable, the Supreme Court of the State of New York, New York County, or any appellate court thereto, is not a proper venue or is an inconvenient forum to hear any such Claims. The parties further agree that service of process with respect to any such Claims need not be personally served or served within the State of New York, but may be served with the same effect as if the party in question were served within the State of New York by sending such service to the intended recipient (with copies to counsel) in the manner provided for notices under Section 5. Notwithstanding the foregoing, if the claim primarily involves a maritime dispute, the parties may, upon mutual agreement in their sole discretion, attempt to settle the dispute by arbitration in the City of New York, pursuant to the Rules of the Society of Maritime Arbitrators, Inc.
>
> (c) IT IS MUTUALLY AGREED BY AND BETWEEN THE PARTIES THAT EACH OF THEM HEREBY WAIVE TRIAL BY JURY IN ANY ACTION OR PROCEEDING BROUGHT BY EITHER PARTY AGAINST THE OTHER PARTY PURSUANT TO SECTION 4(b) OF THIS AGREEMENT.

22. On December 10, 2021, Overseas Los Angeles sent ASC Leasing III, as Owner of the M/V OVERSEAS LOS ANGELES, a Notice and Confirmation of Redelivery Intention of Vessel advising it was the intention to redeliver the M/V OVERSEAS LOS ANGELES on December 11, 2022.

23. Following OSG's notice it was going to redeliver the M/V OVERSEAS LOS ANGELES, AMSC began the process of finding a new bareboat charterer to operate the M/V OVERSEAS LOS ANGELES. K Ship 3, LLC, an affiliate of Keystone Shipping, agreed to bareboat charter the M/V OVERSEAS LOS ANGELES upon its redelivery to ASC Leasing III.

24. The M/V OVERSEAS LOS ANGELES was required to undergo a 15-year special survey and related drydocking prior to the M/V OVERSEAS LOS ANGELES being redelivered to ASC Leasing III.

25. As part of preparing for redelivery and commencement of the new bareboat charters, AMSC requested from OSG: (1) the opportunity to ride and inspect its vessels; (2) access to ABS class records for its vessels; and (3) copies of the drydock specifications with respect to the drydocking of the M/V OVERSEAS LOS ANGELES.

26. OSG was extremely uncooperative, refused AMSC's commercially reasonable and common industry request to have its surveyor and an ABS representative ride the M/V OVERSEAS LOS ANGELES for the purpose of inspecting the vessel.

27. OSG's uncooperative behavior was in violation of Clause 8 of the Bareboat Charters, which provides that the owner has the right at any time after giving reasonable notice to the charterer to inspect or survey the vessel or instruct a duly authorized surveyor to carry out such survey on their behalf without interference to the vessel's operation (a) to ascertain the condition of the vessel and satisfy themselves that the vessel is being properly repaired and maintained, (b) in dry-dock if the charterer has not dry-docked the vessel in accordance with Classification Society requirements, or (c) for any other commercial reason they consider necessary (provided it does not unduly interfere with the commercial operation of the vessel).

28. Moreover, in Clause 44(i) of the Bareboat Charters, OSG undertook and agreed throughout the charter period that it shall, upon request from the owner, allow the owner to inspect and makes copies of all class records, class certificates and survey reports issued with respect to the vessel and any inspection reports obtained or prepared by the charterer or the manager in respect of the vessel.

29. And, finally, Clause 44(i) specifically provides for a list of documents the owner may inspect, which includes inspection reports prepared by the charterer or manager in respect of vessel. The charterer or the manager conducted an inspection of the M/V OVERSEAS LOS ANGELES in order to prepare for the drydocking and special survey, which OSG was obligated to provide. In addition, under Clause 10(c) of the Bareboat Charters, OSG must keep the owners advised of the planned drydocking of the vessels as reasonably required by the owners, which included (1) when and where a drydocking will take place, and (2) what is planned to be done to its vessels as part of the drydocking.

30. In or about August 2022, OSG permitted a surveyor to conduct a cursory inspection the M/V OVERSEAS LOS ANGELES while she was in port for a brief period.

31. Also, in or about early August 2022, OSG began devising a scheme to frustrate and disrupt the transfer of the M/V OVERSEAS LOS ANGELES to its next charterer and manufacture a reason to withhold payments OSG was obligated to pay ASC Leasing III.

32. The scheme commenced on August 17, 2022, when OSG's Vice President, General Counsel and Corporate Secretary wrote to AMSC stating, in part, that "OSG will not be scheduling riding ship inspections on the three ships with Keystone and ABS," "Keystone's presence prior to it becoming the disponent owner of any of the three vessels has been and will be a significant interference with the operation of the vessels, particularly during a voyage, and "Keystone's presence is to benefit itself once it becomes the disponent owner, allowing Keystone to plan for regulatory and CAP 1 surveys. OSG has no obligation to assist Keystone in such regard."

33. OSG's Vice President, General Counsel and Corporate Secretary continued falsely claiming that "Keystone's actions to date have caused significant distraction, disruption, and interference by directly and blatantly soliciting OSG's supervisors and crew. Furthermore,

Keystone has sought to obtain OSG's confidential and proprietary information by direct solicitation of our vendors. We consider these actions to be tortious interference with our business operations, and because Keystone is acting on your behalf, these actions constitute a breach of OSG's right of quiet enjoyment and a breach of confidentiality."

34. OSG's Vice President, General Counsel and Corporate Secretary then wrote - contrary to the above statement that "Keystone is acting on your behalf" - the plain and clear language of Clause 8 of the Bareboat Charter allows inspection by (1) Owners or (2) a duly instructed and authorized surveyor. *Keystone is clearly neither of these*." (emphasis added.)

35. On November 18, 2022, Overseas Los Angeles served ASC Leasing III with a Notice of Material Breach of Quiet Enjoyment stating, in relevant part, as follows:

> By email on August 17, 2022, I notified you that the activities of Keystone while conducting an inspection on the *Overseas Los Angeles* under bareboat to certain OSG entities to be unacceptable and problematic. After a thorough internal investigation of the facts and an assessment of the continuing harm and damages suffered as a result of these actions, I am serving this Notice to ASC Leasing III, Inc. ("Owner") of Owner's material breach of the quiet enjoyment clause of the Bareboat Charter dated December 11, 2009, as amended...

36. The Notice of Material Breach of Quiet Enjoyment described, vaguely, what OSG deemed to be the basis for the allegation that that was a material breach of quiet enjoyment, to wit:

> As provided in Clause 49 of the Bareboat Charter, the Charterer is entitled to quiet enjoyment of the *Overseas Los Angeles* (the "Vessel") at all times during the period of the Bareboat Charter. In contravention to this right, Owner's appointed representatives, Captain Mike Donavan and Dave Farrell of Keystone, boarded the *Overseas Los Angeles* in Port Everglades, Florida on August 4, 2022, under the auspices of conducting a vessel inspection. While onboard the Vessel and during cargo operations, Owner's appointed representatives actively recruited multiple shipboard officers as well as the Fleet Manager, Jerry Kachler, all of whom were employed by Charterer at the time, to join Keystone. This flagrant conduct exceeded the scope of the limited inspection to which Charterer had agreed with Owner, and more notably, substantially interfered with the Vessel's operation, Charterer's possessory rights, and quiet enjoyment to which Charterer is entitled.

37. OSG further stated, falsely, that "Owner disturbed and interfered with Charterer's quiet and peaceful use, possession and engagement of the Vessel. The determination of the scope of damages caused by these wrongful actions is on-going as the full extent of the damage is not able to be measured until redelivery of the Vessel is complete. In light of the aforementioned material breach, Charterer will proceed accordingly and reserves all rights and remedies."

38. At no point did OSG state *how* "Owner disturbed and interfered with Charterer's quiet and peaceful use, possession and engagement of the Vessel." OSG's self-serving and conclusory allegations are meritless.

39. After feigning outrage over the surveyor's alleged tortious conduct during an in-port survey of the M/V OVERSEAS LOS ANGELES, OSG agreed to permit the same surveyor to survey the vessel in drydock.

40. On December 6, 2022, ASC Leasing III responded to OSG's misguided and manufactured claim of Material Breach of Quiet Enjoyment, stating, in relevant part, as follows:

   a. we categorically reject OSG's misguided assertion that there was a material breach of the quiet enjoyment clause of the Amended and Restated Bareboat Charter, dated December 11, 2009, . . during the inspection of the *Overseas Los Angeles* (the "Vessel") in Port Everglades, Florida, on August 4, 2022. Even if the allegations were true – which they are not – as a matter of law, OSG cannot make out a claim for breach of quiet enjoyment under the Bareboat Charter.

   b. it also appears that the purpose of your initial email of August 17, 2022, and letter of November 18, 2022, is to frustrate Owner's ability (1) under Clause 8 of the Bareboat Charter to inspect or survey the Vessel and (2) to transfer the Vessel to a subsequent bareboat charterer after the expiration of the Bareboat Charter. Owner provided proper notice and requests that representatives would perform independent surveys and ride the Vessel prior to the Vessel's 3rd Special Survey to ensure that the Vessel's condition is both safe and satisfactory at redelivery under the expiring Bareboat Charter. OSG refused to allow representatives to ride the Vessel and only permitted the representatives to conduct a limited inspection of the Vessel while in port. Owner's notice and request was not unusual in any way.

c. OSG's reasoning behind not permitting Class and representatives access to the Vessel while underway as requested by the Owner appears not to be rooted in any concern for the operation of the Vessel, but rather to frustrate the smooth transition of the Vessel to Keystone as the subsequent bareboat charterer. OSG's August 17, 2022 email response to Owner's reasonable request to permit Class and representatives access to the Vessel that "OSG has no obligation to assist Keystone in such regard," made clear, at that time, OSG's true intent was simply to frustrate the transfer of the Vessel to Keystone, the subsequent bareboat charterer. In that regard, the fact that any inspection of the Vessel may benefit Keystone or another potential charterer of the Vessel is irrelevant and is not an excuse for OSG's non-performance because OSG is still required to fulfill its contractual obligations under the Bareboat Charter to permit the Owner to inspect its Vessel.

d. the allegations in OSG's August 17 and November 18, 2022 correspondence are vague and lack any factual support. At no time while on board the Vessel did anyone notify the representatives that their actions were disruptive, a distraction or otherwise interfered with the operation of the Vessel. Accordingly, Owner reiterates that even if OSG's allegations are true – and Owner does not believe that they are – as a matter of law, OSG cannot make out a claim for breach of its quiet enjoyment of the Vessel under the Bareboat Charter.

41. On December 9, 2022, the M/V OVERSEAS LOS ANGELES was redelivered.

42. On December 12, 2022, OSG America served ASC Leasing III with a Notice of Intent to Withhold DPO Amount Upon Redelivery – *Overseas Los Angeles,* stating that "[p]ursuant to Clause 3(c) and (d) of the Amendment, and with reference to the Notice of Material Breach of Quiet Enjoyment dated November 18, 2022 from Overseas Los Angeles LLC, OSP intends to withhold the DPO Amount upon redelivery of the *Overseas Los Angeles*."

43. On December 12, 2022, ASC Leasing III served a Notice of Breach of Agreement Regarding DPO Obligation for Hull No. 007 on OSG America advising, in part that:

- Under Section 3(c) of the DPO Agreement, upon expiration of the last Optional Period of the Bareboat Charter, the remaining balance of the DPO Amount, plus accrued and unpaid interest thereon, shall become immediately due and payable by OSP to the Owner. If such amount is not paid within three (3) days, the full

    amount due (including accrued and unpaid interest) shall accrue interest at the Interest Rate until paid in full.

- OSP's failure to pay the DPO Amount plus accrued and unpaid interest upon the expiration of the Bareboat Charter constitutes a breach of Section 3(c) of the DPO Agreement. The Owner demands payment of the DPO Amount plus accrued and unpaid interest thereon through the date hereof in the amount of $3,936,519.00. As provided in Section of the DPO Agreement, if such amount is not paid today, it will accrue interest at the Interest Rate until paid in full.

44. Plaintiff has complied with all contractual obligations under all applicable contracts relating to the charter of the M/V OVERSEAS LOS ANGELES.

45. To date, OSG, OSG America and Overseas Los Angeles have failed to pay ASC Leasing III the DPO Amount of $3,936,519.00, which has been demanded and is presently due and owing.

(ii) M/V OVERSEAS NEW YORK

46. On June 3, 2005, ASC Leasing IV entered into a Bareboat Charter with Overseas New York for the M/V OVERSEAS NEW YORK, which was amended and restated pursuant to the Amended and Restated Bareboat Charter, dated as of December 11, 2009. The Amended and Restated Bareboat Charter for the M/V OVERSEAS NEW YORK was further amended on July 30, 2012 (Amendment No. 1.) and December 20, 2022 (Amendment No. 2).[2]

47. On June 3, 2005, OSG made a Bareboat Charter Guaranty, in favor of, among others, ASC Leasing IV, guaranteeing the obligations of Overseas New York LLC under its Bareboat Charter with ASC Leasing IV, which Bareboat Charter Guaranty was assigned to and

[2] OSG Bulk Ships Inc. is likewise the paying agent for Overseas New York LLC having received and made payments on behalf of Overseas New York LLC under the bareboat charter between Overseas New York LLC and ASC Leasing IV, Inc. for the M/V Overseas New York.

assumed by OSG America and OSG America Operating Company LLC, pursuant to an Assignment and Assumption Agreement, dated as of November 8, 2007.

48. On December 10, 2021, Overseas New York sent ASC Leasing IV, as Owner of the M/V OVERSEAS NEW YORK, a Notice and Confirmation of Redelivery Intention of Vessel advising it was the intention to redeliver the M/V OVERSEAS NEW YORK on December 11, 2022.

49. On or about October 27, 2022, ASC Leasing IV as Owner of the M/V OVERSEAS NEW YORK, agreed to extend the redelivery date for the M/V OVERSEAS NEW YORK until December 13, 2022.

50. By email dated December 6, 2022, AMSC reminded Defendants that Clause 15 of the Bareboat Charter for the M/V OVERSEAS NEW YORK provided for Owners' right to receive charter hire until the completion of the redelivery process.

51. AMSC also pointed out at that time that the Bareboat Charter specifically provided that “should the Charterers fail to redeliver the Vessel within The Charter Period, the Charterers shall pay the daily equivalent to the rate of hire stated in Box 22 **plus 10 per cent** or to the market rate, whichever is the higher, for the number of days by which the Charter Period is exceeded." (emphasis added.)

52. OSG has refused to pay the additional 10% despite redelivering the M/V OVERSEAS NEW YORK on December 20, 2022, instead of December 13, 2022, mistakenly relying on Box 21 of the Bareboat Charter which provides that the Fixed Term is “plus/minus 30 days at Charterers option.”

53. The Fixed Term referred to in Box 21 – a defined term under the Bareboat Charter - ended on December 11, 2019, when the parties agreed to extend the Bareboat Charter at the expiration of the Fixed Term.

54. The extension of the Bareboat Charter resulted in the charter entering the Optional Period. The right to apply "+/- 30 days" to the Fixed Term does not apply to the Optional Period.

55. On December 20, 2022 at 14:15 hours E.S.T. the M/V OVERSEAS NEW YORK was redelivered.

56. As a result of the late redelivery, Plaintiffs are owed additional charter payments totaling $15,495.31, which represents the daily Charter Hire rate increased by 10% for the period of December 14 through the Redelivery Date (pro rata) pursuant to Clause 15 of the Bareboat Charter.

57. Plaintiffs have complied with all contractual obligations under all applicable contracts relating to the charter of the M/V OVERSEAS NEW YORK.

58. To date, Overseas New York have failed to pay ASC Leasing IV additional charter payments totaling $15,495.31, which has been demanded and remains due and owing.

**AS AND FOR A FIRST CAUSE OF ACTION AGAINST DEFENDANTS OSG, OSG AMERICA, AND OVERSEAS LOS ANGELES**
**(Breach of Contract)**

59. Plaintiffs repeat and reassert each and every allegation contained in the foregoing paragraphs as if set forth herein in full.

60. Defendant OSG and Plaintiff AMSC entered into the above-referenced Framework Agreement, original Bareboat Charter, Bareboat Charter Guaranty, Amended and Restated Framework Agreement, Universal Settlement Agreement, Amended and Restated Bareboat Charter with Overseas Los Angeles for the M/V OVERSEAS LOS ANGELES, Agreement

Regarding DPO Obligation For Hull No. 007 (i.e., the M/V OVERSEAS LOS ANGELES), and all related amendments thereto, to govern the relationship between OSG and Plaintiff AMSC, and their respective affiliates and subsidiaries, regarding the operation of the M/V OVERSEAS LOS ANGELES.

61. Following the redelivery of the M/V OVERSEAS LOS ANGELES, OSG, OSG America and Overseas Los Angeles failed to pay the DPO Obligation due and owing to Plaintiffs for the use of the M/V OVERSEAS LOS ANGELES and as a result are in breach of contract.

62. As a direct and proximate result of Defendants' OSG, OSG America, and Overseas Los Angeles actions, Plaintiffs have suffered damages in an amount not less than $4,500,000.

**AS AND FOR A SECOND CAUSE OF ACTION AGAINST DEFENDANTS OSG, OSG AMERICA, AND OVERSEAS NEW YORK**
**(Breach of Contract)**

63. Plaintiffs repeat and reassert each and every allegation contained in the foregoing paragraphs as if set forth herein in full.

64. Under the Bareboat Charter for the M/V OVERSEAS NEW YORK and the Bareboat Charter Guaranty, Defendants OSG, OSG America and Overseas New York are contractually obligated to pay charter hire plus 10% pro rata for the period December 14, 2022, until December 20, 2022, at 14:15 hours E.S.T.

65. Defendants OSG, OSG America, and Overseas New York have refused to pay the full charter hire due and owing and thus breached its contractual obligations.

66. As a direct and proximate result of Defendants' OSG, OSG America, and Overseas New York breach of contract, Plaintiffs have suffered damages in an amount not less than $15,495.31.

**AS AND FOR A THIRD CAUSE OF ACTION AGAINST ALL DEFENDANTS**
**(Unjust Enrichment)**

67. Plaintiffs repeat and reassert each and every allegation contained in the foregoing paragraphs as if set forth herein in full.

68. Plaintiffs are entitled to recover against Defendants, jointly and severally, based on the doctrine of unjust enrichment because the refusal to pay the DPO Obligations due and owing to Plaintiffs directly benefitted each Defendant and it would be inequitable and unconscionable to allow Defendants to retain those benefits to the detriment of Plaintiffs.

69. Defendants were unjustly enriched as a direct result of the refusal to pay the DPO Obligations due and owing to Plaintiffs to the detriment of Plaintiffs.

70. As a direct and proximate result of Defendants actions, Plaintiffs have suffered damages in an amount not less than $4,500,000.

**WHEREFORE,** Plaintiffs pray as follows:

A. That Plaintiffs' claims be granted in their entirety and that judgment be entered in favor of Plaintiffs and against Defendants for an amount not less than $4,500,000; and

B. That Plaintiffs be granted such other and further relief as may be just and equitable.

Dated: New York, New York
December 22, 2022

**BLANK ROME LLP**

*/s/ William R. Bennett*
William R. Bennett, III
1271 Avenue of the Americas
New York, NY 10020
(212) 885-5000
(917) 332-3068
William.bennett@blankrome.com
*Attorney for Plaintiffs*

**VERIFICATION**

I, Leigh Jaros, in my capacity as (i) the Business Controller / Finance Manager of AMSC ASA, (ii) the sole director, Chairman of the Board, Chief Executive Officer and President of each of American Tanker, Inc., and (iii) a director and the Chairman of the Board, Chief Executive Officer and President of American Shipping Corporation, ASC Leasing III, Inc., and ASC Leasing IV, Inc., hereby state that I am familiar with the facts set forth in the foregoing Complaint, that I am authorized to execute this Verification on behalf of each of the Plaintiffs and that the facts set forth therein are true and correct to the best of my knowledge, information and belief.

Pursuant to 28 U.S.C. § 1746(1), I solemnly declare under penalty of perjury that the foregoing is true and correct.

Executed on December 22, 2022.

Leigh Jaros